280 So.2d 678 (1973)
KLOSTERS REDERI A/S, a Norwegian Corporation, Petitioner,
v.
ARISON SHIPPING COMPANY, a Florida Corporation, Respondent.
No. 43142.
Supreme Court of Florida.
May 30, 1973.
Rehearing Denied August 10, 1973.
*679 Stuart W. Patton and Herbert L. Nadeau of Patton, Kanner, Nadeau, Segal, Stobs & Zeller, Miami, for petitioner.
Eugene C. Heiman, of Heiman & Crary, Miami, for respondent.
McCAIN, Justice.
This cause is before this Court on conflict certiorari granted to review the decision of the Third District Court of Appeal, opinion filed October 18, 1972, and reported at 268 So.2d 428, which purportedly conflicts with those cases hereinafter discussed. We have considered the cases cited for conflict and have determined that we have jurisdiction pursuant to Fla. Const.Art. V, § 3(b)(3), F.S.A.
In this extremely complicated and complex case the Third District Court of Appeal reversed an order of the trial judge who had denied respondent's petition for compulsory arbitration in an essentially equity action.
Apropos is a review of the essentials in the case up to this time (our opinion).
Petitioner's sworn complaint alleged that Klosters Rederi A/S, a Norwegian corporation (hereinafter referred to as Klosters), doing business as Norwegian Caribbean Lines, owned and operated four deluxe cruise ships out of the Port of Miami; that on October 8, 1969, Klosters entered into a contract with Arison Shipping Company (hereinafter referred to as Arison), pursuant to which Arison was to act as ships agent for Klosters; that the contract contained provision for payment of costs and expenses with a profit participation; that provision was therein made for the depositing by Arison into the bank account of Norwegian Caribbean Lines of all sums received for advance tickets and reservations within 48 hours after receipt by Arison; that the contract contained provisions for termination and for arbitration of disputes arising under the contract; that the contract specified that the termination notice should not become effective until 30 days after notice in order to afford the offending party an opportunity to cure any alleged defaults; that on December 31, 1971, Klosters served a notice of termination upon Arison for breach of contract; and that the termination notice recited breaches by Arison of fiduciary duties imposed by the contract, including defalcations and misappropriation by Arison of funds belonging to Klosters and failure to attain the average net over-all profits called for by the contract.
Arison, on January 3, 1972, responded to the termination notice by denying any breach or wrongdoing and making demand upon Klosters for the payment of $400,000.00 as a partial payment on damages, pending a final accounting.
The sworn complaint for an accounting and other equitable relief filed February 2, 1972, was against Arison Shipping Company, a Florida corporation, Ted Arison, individually, Mr. Brain, Inc., a Florida corporation, Georgian Bay Lines, Inc., an Illinois corporation, The Carner Bank of Miami Beach, Pan American Bank of Miami and The Florida National Bank and Trust Company at Miami. The named corporate defendants, apart from the banks, were subsidiaries of Arison.
The complaint also charged Arison with fraud, misappropriation of funds and breaches of fiduciary duties under the contract. *680 The prayer was for the appointment of a receiver without notice to insure preservation of funds and records in the possession of Arison and for other extraordinary equitable relief.
Accompanying the complaint was a motion for the appointment of a receiver to which affidavits were attached delineating certain of the claimed misappropriations and defalcations. One of such affidavits was executed by the president of the defendant, Georgian Bay Lines, Inc., a corporation controlled by Arison. To enumerate the numerous alleged defalcations and misappropriations would serve no purpose at this time. Suffice it to say that the affidavits evidenced misappropriations by Arison approximating $1,000,000.00 during the month of January 1972 and subsequent to the termination notice.
Pursuant to the sworn complaint and the affidavits, a receiver was appointed without notice on February 2, 1972, and he has undertaken his duties and has recovered in excess of $1,500,000.00 of assets allegedly improperly in the custody of Arison and others.
The order appointing the receiver without notice was affirmed on appeal on March 28, 1972. Arison Shipping Company v. Klosters Rederi A/S, 259 So.2d 784, Third District Court of Appeal.
The same day that the receiver was appointed, Arison also filed its petition to compel arbitration. The receiver was appointed and functioning prior to any hearing on Arison's petition to compel arbitration.
To Arison's petition for compulsory arbitration Klosters filed a response. Arison's petition for compulsory arbitration was denied by the same court that had appointed the receiver. Arison appealed this order.
While the appeal was awaiting perfection and argument, respondent filed a counterclaim wherein a jury trial was demanded. That counterclaim was not only against Klosters but against third parties who were not signators to the arbitration agreement, and upon motion the petitioner was permitted to file that counterclaim as a part of the record on appeal.
The Third District Court of Appeal on October 18, 1972, reversed the lower court and ordered compulsory arbitration. Arison Shipping Company v. Klosters Rederi A/S, 268 So.2d 428.
In this posture, the case now appears before us for review.
Naturally, respondent's attempt to invoke compulsory arbitration (Florida Arbitration Code, Chp. F.S. 682, F.S.A.) is derived from the contract between the parties calling for arbitration. However, equally compelling in this case is that the trial court's appointment of a receiver was an extreme and unmistakable jurisdictional act by a court of equity, and the affirmance of the appointment was confirmation of the need and necessity for the equitable relief prayed for (not only as between the principal parties but also as to the other numerous named defendants).
In Flaherty v. Metal Products Corporation, Fla. 1955, 83 So.2d 9 even though decided prior to adoption of the Florida Arbitration Code, the rationale was succinctly stated:
"... Even if the clause be construed as a contract to arbitrate all further disputes, a question which we do not now decide, its existence could be no bar to the maintenance of the suit... ."
In Shearson, Hammill and Co. v. Vouis, Fla.App. 1971, 247 So.2d 733, it was held that compulsory arbitration of issues of alleged fraud, misrepresentation and breach of fiduciary duties of stockbrokers was inconsistent with the policy and language of the Florida Securities Law, which controls over the provisions of the Arbitration *681 Code. Certainly, the Securities Law is inapplicable here, but Shearson also stated, by citing Cruger v. Allstate Insurance Co., Fla.App. 1964, 162 So.2d 690, the following:
"... This court refused to oust the circuit court, in an equity matter, of its general jurisdiction by allowing arbitration, notwithstanding a statutory provision which attempted to create an exception to the well-settled doctrine that an agreement to arbitrate a dispute in the future will not be enforced as an attempt to oust the court's jurisdiction."
In addition to the Flaherty, Shearson and Cruger cases, supra, see also Moss v. Sperry, 140 Fla. 301, 191 So. 531, to the effect that equity is far better equipped to afford full and complete relief where third parties are involved and the action is founded upon fraud and breach of fiduciary duties with the additional requirement of a complicated accounting. Thus, in such an instance, a court of equity having acquired jurisdiction should proceed with an adjudication of all rights which otherwise would be determined in piecemeal fashion. This affords full and complete relief.
Sub judice, the complicated issues involved (including allegations of fraud), the presence of numerous third parties, coupled with the appointment of and action by a receiver and his affirmance of appointment upon appeal, compel this Court to conclude that it was error for the District Court of Appeal to compel arbitration.
We are also satisfied that Arison's conduct, subsequent to its request for arbitration, was inconsistent with its demand and constituted a waiver of any contractual right to arbitration. A party's contract right may be waived by actively participating in a lawsuit or taking action inconsistent with that right. Ojus Industries, Inc. v. Mann, Fla.App. 1969, 221 So.2d 780; Cornell & Company, Inc. v. Barber & Ross Company (1966), 123 U.S. App.D.C. 378, 360 F.2d 512.
Accordingly, the decision of the District Court of Appeal, herein sought to be reviewed, is quashed and this cause is remanded with directions to reinstate the order of the trial court denying compulsory arbitration.
It is so ordered.
CARLTON, C.J., ERVIN and DEKLE, JJ., and GALE, Circuit Judge, concur.