POLEN, Judge.
In this case of first impression, the City of Delray Beach (“City”) appeals from a final order entered by the local Public Employees Relations Commission (“Commission”) in the City of Delray Beach. The local Commission, which has jurisdiction over unfair labor practice charges filed in that area, found in favor of the Professional Firefighters of Del-ray Beach, Local 1842, International Association of Firefighters (“Local 1842”), on their charges of unfair labor practice against the City. We affirm.
Local 1842 is an employee organization within the meaning of section 35.031, Delray Beach Code,[1] and the certified bargaining agent for a unit of employees of the City. The City of Delray Beach is a-public employer within the meaning of section 35.031, Del-ray Beach Code[2]. Since 1976, Local 1842 has been the certified bargaining agent and has entered into various collective bargaining agreements with the City. These collective bargaining agreements have consistently provided for employees to receive individual performance increases on their merit date since fiscal year 1982-1983, through and including fiscal year 1990-91. Further, the collective bargaining agreements have consistently provided for individual performance increases to “topped out” employees (i.e., those who have reached maximum pay rate for their position) on their merit increase date since fiscal year 1985-86 through and including fiscal year 1990-91.
In May, 1991, the parties began negotiating for a new contract. In July 1991, negotiating representatives of the City and Local 1842 met in the City Attorney’s office to discuss the subject of individual performance increases. This was the first time this subject was discussed seriously. According to Local 1842, because it was anticipated that negotiations would not be completed prior to the expiration of the 1990-1991 collective bargaining agreement, Local 1842 informed the City that it expected individual performance increases to continue after the contract’s expiration.
On September 30, 1991, the contract expired. The parties did not reach a successor agreement prior to its expiration. After September 30,1991, the City did not pay individual performance increases.
In November, 1991, representatives from the City and Local 1842 again discussed the issue regarding the City’s obligation to continue paying individual performance increases during the status quo[3] period after *160 the contract’s expiration. Local 1842 continued to claim that the City should continue to pay the increases in that interim.
From November, 1991, through February, 1992, the parties were involved in special master proceedings, pursuant to section 447.-403, Florida Statutes and section 36.039, Del-ray Beach Code.[4] On the last day of the special master hearing, the parties again discussed the issue of the City’s obligation to pay individual performance increases. Local 1842 advised the City that unless the City paid the increases and paid them retroactively, Local 1842 would file an unfair labor practice charge.
The City did not pay the individual performance increases to the eligible employees and, on March 30, 1992, Local 1842 filed an unfair labor practice charge against the City pursuant to the City of Delray Beach Code. On April 27, 1992, the General Counsel for the Public Employees Relations Commission found the charge to be legally sufficient and accordingly issued a Notice of Sufficiency. He further determined that the employees had an objective expectation to receive individual performance increases based on their receiving such increases pursuant to several collective bargaining agreements since 1982. The General Counsel also stated that his perusal of the latest collective bargaining agreement had not revealed any language that reflected a clear and unmistakable in-, tent to restrict the individual performance increases to the contract period. That is, the contract did not contain a clear and unmistakable waiver of the increases during periods outside the contract effective dates.
Both parties filed motions for summary judgment with accompanying memoranda of law. Local 1842 also filed a motion for attorney’s fees and costs. The City also filed an affidavit from a Milena Walinski in support of its motion and Local 1842 filed a response thereto. On July 23, 1992, the Public Employees Relations Commission heard oral argument on the foregoing. On August 7, 1992, the Commission entered an order that granted in part Local 1842’s motion for summary judgment. The order also directed an evidentiary hearing and denied the City’s motion for summary judgment. It was the Commission’s determination that, in light of the most recent as well as the previous collective bargaining agreements, the employees had an objective expectation to receive individual performance increases during the status quo period following the September 30, 1991 agreement expiration. As a result, the Commission found that the City interfered with the public employees’ rights with respect to collective bargaining, or, had failed to bargain collectively in good faith with Local 1842, under section 35.043(A)(1) and (3), City of Delray Beach Code. The Commission thus granted in part Local 1842’s motion for summary judgment. However, it deferred resolution of certain issues pending the ordered evidentiary hearing.
On October 12, 1992, the Commission held a hearing on various matters: (1) a motion for reconsideration that the City filed on the order granting partial summary judgment to Local 1842 (2) on the evidentiary matters pending, and (3) Local 1842’s motion for attorney’s fees and costs. On February 18, 1993, the Commission issued its final order. The order was consistent with its previous grant of Local 1842’s motion for summary judgment. It found that the City had violated the employees’ rights when it failed to continue paying the individual increases during the status quo period, and as a result, it held that the City had engaged in unfair labor practices in violation of the Delray Beach City Code. The Commission also granted Local 1842’s motion for attorney’s fees and costs. The attorney’s fees and cost award was based upon the Commission’s further conclusion that the City knew, or had reason to know, that its failure to pay the individual performance increases to its employees violated said Code. On March 19, 1993, the City filed a Notice of Administrative Appeal, which appeal is now before this court.
The City argues that the Commission’s application of the facts to the law is clearly *161 erroneous and thus, this court owes the agency’s action no deference and the order on appeal must be reversed. We disagree and find that the collective bargaining agreement does not contain any provision(s) that would permit a construction to the effect that Local 1842 waived its right to individual performance increases during the status quo period.
The standard of review in the instant case is such that this court must defer to the agency’s interpretation of the law in its area of expertise (in the instant case, that is Chapter 447, Part II), as long as the interpretation is consistent with legislative intent and is supported by competent, substantial record evidence. See Public Employees Relations Comm’n v. Dade Co. Police Benevolent Ass’n, 467 So.2d 987, 989 (Fla.1985).
Where the contract at issue is one reached under Chapter 447, which addresses collective bargaining agreements, during the period of time that follows the contract’s termination, but prior to a new agreement, an employer is prohibited from unilaterally altering wages,[5] hours, and other employment terms and conditions. See I.A.F.F., Local 2416 v. City of Cocoa, 14 F.P.E.R. P 19311 at 695 (1988), affirmed, 575 So.2d 657 (Fla. 1st DCA 1991).[6] We find that the law stated in Nassau Teachers Ass’n. v. School Bd. of Nassau County, 8 F.P.E.R. P. 13206 at 391 (1982), and the reasoning therein, applies equally in the instant case:
Where a long practice of paying incremental or step wage increases based merely upon years of service has been continued in collective bargaining agreements, employees still reasonably expect their accrued step or experience wage increases even though negotiations for a new agreement are pending. Under these circumstances the better view is to require payment of increments as part of the status quo pending negotiation of a new agreement. [citations omitted] To do otherwise encourages the use of the inevitable increment as a bargaining tool. For instance, an employer may be encouraged to prolong negotiations past expiration of the existing agreement to gain the bargaining leverage created by legal withholding of an experience increment.
Id. at 391 (emphasis added). An exception to this general rule applies where the employees have waived the right to maintain the status quo by the language in the collective bargaining agreement. See Escambia Education Assoc. v. School Bd. of Escambia County, 10 F.P.E.R. P. 15160 at 315 (1984). This is the exception the City maintains exists in the instant case. Thus, if the City could show that such language existed in the collective bargaining agreement, it would be entitled to reversal. However, the waiver must be “clear and unmistakable.” City of Cocoa, at 695. We hold that the Commission was correct when it found that no such “clear and unmistakable” waiver existed, because the collective bargaining agreement at bar does not meet the criteria stated in FOP Miami Lodge 20 v. City of Miami, 12 F.P.E.R. P. 17029 (1985):
A “clear and unmistakable” contractual waiver of bargaining rights is demonstrated by language which unambiguously confers upon an employer the power to unilaterally change terms and conditions of employment.... [A] waiver of this type must be stated with precision that simply by reading the pertinent contract provision employees will be reasonably alerted that the employer has the power to change *162 certain terms and conditions of employment.
Id. at 40. Moreover, the “plain meaning rule” used in interpretation of contract is inapplicable to a collective bargaining agreement insofar as “clear and unmistakable” language is concerned. The employee’s bargaining rights as a rule are included, unless specifically waived. Contrary to the City’s representation, without express waiver language, the language in the contract cannot simply be interpreted to “imply” waiver.
The City identifies the “waiver” language as wording in the 1988-1991 contract, which provides that individual performance increases are applicable “only” with respect to fiscal years 1988-89,1989-90, and 1990-91. The City thus contends that, since the increases are limited to specified time periods, they must be discontinued during the status quo period. As Local 1842 correctly responds, however, that statement of the law is incorrect. The mere reference in a collective bargaining agreement to effective years of the contract is not sufficient to limit the payment of increases to the contract term, where such increases have endured for a significant time period. See City of Cocoa at 698 (“[A]n obligation exists after a contract has expired when a past practice has become established and maintained through the existence of several bargaining agreements”).
City of Cocoa also invalidates the City’s contention that if both parties wanted Local 1842 to continue to receive increases during the status quo period, they would have specifically provided for it. That logic is the complete reverse of established law. An accurate statement of the law is that if the City wanted to limit the payment of these increases, it could have attempted to provide language of limitation. We note that Local 1842’s brief provides us with an example where the parties, in the Hospitalization Payment Article, stated that employees have to pay for insurance for their dependents, as well as the insurer’s increases to their premium, “during the term of this Contract.”
We find that the City’s argument regarding extrinsic evidence also lacks merit. The City maintains that the Commission erred when it considered extrinsic evidence in order to construe the collective bargaining agreement. We disagree. As Local 1842 indicates, the City argued below that the Commission should consider the parties’ bargaining history, which amounts to “extrinsic evidence.” Thus, the City is now estopped from raising that argument and claiming error. On the merits, the argument is also specious. Since the case law calls for the Commission to determine the status quo and thus assess the employees’ reasonable expectations, it was reasonable for the Commission to consider the parties’ bargaining history. The record shows consistent receipt of these increases by eligible employees,[7] which, absent clear and unmistakable contractual waiver, confers upon the employees a reasonable expectation of continuity.
Finally, the City argues that the order on appeal does not reflect the status quo, because ten years ago negotiations ran substantially beyond the contract term and the City ceased paying the individual performance increases. The City contends that this was a “break” in the status quo. Apparently, the City made this argument below without citation to authority and does the same in this appeal. The law on this issue is well-settled in Local 1842’s favor. The Commission considered and rejected the exact argument in Pensacola Junior College Faculty Ass’n v. Board of Trustees of Pensacola Junior College, 13 F.P.E.R. P. 18150 at 377 (1987), I.A.F.F., Local 2266 v. City of St. Petersburg Beach, 13 F.P.E.R. P. 18116 at 284 (1987), and Escambia Education Ass’n, FTP-NEA v. School Board, 10 F.P.E.R. P. 15160 at 301 (1984). Furthermore, like Es-cambia Education Ass’n, in the instant case *163 although the increases during this “break” were delayed that one time many years ago, bargaining unit members received their increases retroactively after ratification of the successor agreement. The “break” was never again repeated. Accordingly, we reject the City’s argument on this point.
We agree with the Commission’s conclusion, as a matter of law, that the City violated the City of Delray Code and pertinent statutes. The record before us contains competent, substantial evidence to support the Commission’s finding that Local 1842 employees had a reasonable expectation that they would continue to receive the individual performance increases in the period between the collective bargaining agreements. As a result, the order on appeal must be affirmed.
We also find the City’s second point on appeal to be without merit. The City argues that the Commission abused its discretion when it awarded Local 1842 attorney’s fees and costs under its City Code. Under Florida law, the Commission may award attorney’s fees and costs to a prevailing party in an unfair labor practice proceeding when it determines such an award to be appropriate. §§ 447.503(6)(c), Fla.Stat. (Supp.1991). Our standard of review on appeal is whether the Commission has abused its discretion. See City of Lake Worth v. Palm Beach County Police Benevolent Ass’n, 413 So.2d 465, 466 (Fla. 4th DCA 1982). To assess whether there has been an abuse of discretion, the question we must answer is whether the offending party (here, the City) knew or should have known that it was engaging in conduct prohibited by Chapter 447, Part II. See Leon County PBA, Inc. v. City of Tallahassee, 8 F.P.E.R. p. 13400 (1982), aff'd, 445 So.2d 604 (Fla. 1st DCA 1984). A factor which the Commission considers to evaluate whether the offending party knew or had reason to know of its violation, is whether the alleged violation is based on established law. Id. As Local 1842 correctly claims, the Commission decided the exact legal question before this panel in, e.g., City of Cocoa and Nassau Teachers’ Ass’n. The Commission stated in the former that absent waiver, exigent circumstances that require immediate action, or a legislative resolution of an impasse pursuant to section 447.403, Florida Statutes, a public employer cannot unilaterally alter individual performance increases. City of Cocoa at 695. Such act constitutes a per se violation of subsections 447.501(l)(a) and (c). On identical facts, the Commission awarded attorney’s fees and costs to the prevailing party. See e.g. Emergency Medical Personnel and Critical Care Technicians Ass’n v. Board of Commissioners for Hillsborough County, 17 F.P.E.R. P. 22247 (1991). It is notable that the City itself provides in its appendix most of the cases that directly contradict its position in this appeal. Based on the undisputed facts below, and the overwhelming body of Commission decisions that support appellee’s position, we hold that the City knew or should have known that it was violating well-established law when it stopped paying the individual performance increases. Therefore, the Commission’s attorney’s fee and costs award to Local 1842 is also affirmed.
DELL, C.J., and STEVENSON, JJ., concur.

. "Employee organization” is defined as "[a]ny labor organization, union, association, fraternal order, occupational or professional society, or group, however organized or constituted, which represents or seeks to represent any public employee or group of public employees concerning any matters relating to their employment relationship with a public employer.”

. The Code defines “Public employer” as ”[t]he city and any subdivision or agency thereof which the Public Employees Relations Commission determines has sufficient legal distinctiveness to properly carry out the functions of a public employer.”

. The status quo period refers to the hiatus that sometimes occurs between collective bargaining agreements. That is, if the agreement expires and another has not been executed, the terms of the first contract survive the contract's expiration. Until a new agreement is negotiated, an employer is prohibited from unilaterally altering certain material terms in the expired contract. See I.A.F.F., Local 2416 v. City of Cocoa, 14 F.P.E.R. P. 19311 at 695 (1988), affirmed, 575 So.2d 657 (Fla. 1st DCA 1991).

. These sections provide that there shall be a special master appointed to hear the unresolved issues wherever an impasse occurs during negotiations. The special master then makes recommendations to the Commission.

. Individual performance increases have been held to constitute one of the items included in status quo considerations. See Emergency Medical Personnel and Critical Care Technicians Assoc. v. Board of County Commissioners for Hillsborough County, 17 F.P.E.R. P. 22247 (1991).

. In City of Cocoa, although the City made a unilateral alteration of the monies paid to the employees, that alteration was upheld. The Commission upheld the alteration, and the First District affirmed, because the past practice had resulted in incorrect wages being paid. The law was previously established that where an erroneous computation resulted in overpayment of wages, that overpayment could not be considered "wages” under the above-stated holding. Thus, it was proper for the Commission to alter the wages, where by doing so, it was correcting an error. Id. at 696. In the instant case, no one claims the existence of an error which the City sought to correct through cessation of the subject increases.

. Local 1842 points out that the City has not made an argument in its Initial Brief regarding the contractual provisions relating to employees who have "topped out” in their salary range, or hit the salary ceiling for their positions. As a result, Local 1842 contends that the City must concede that the individual performance increases are due these individuals. These "topped out” individuals have consistently received the increases as a lump sum on their merit increase date since fiscal year 1985-1986. Thus, the "lump sum” increases must be continued during the status quo period as well.